Matter of Rosenblum (Tura, Inc.--Commissioner of Labor) (2022 NY Slip Op 00929)





Matter of Rosenblum (Tura, Inc.--Commissioner of Labor)


2022 NY Slip Op 00929


Decided on February 10, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:February 10, 2022

532957
[*1]In the Matter of the Claim of Steven S. Rosenblum, Respondent. Tura, Inc., Appellant. Commissioner of Labor, Respondent.

Calendar Date:January 12, 2022

Before:Lynch, J.P., Clark, Aarons and Reynolds Fitzgerald, JJ.

Greenburg Traurig, LLP, Florham Park, New Jersey (Wendy Johnson Lario of counsel), for appellant.
Salvatore C. Adamo, Albany, for Steven S. Rosenblum, respondent.
Letitia James, Attorney General, New York City (Dawn A. Foshee of counsel), for Commissioner of Labor, respondent.



Clark, J.
Appeals from two decisions of the Unemployment Insurance Appeal Board, filed September 23, 2020, which ruled that Tura, Inc. was liable for additional unemployment insurance contributions based on remuneration paid to claimant and others similarly situated.
Tura, Inc. is a manufacturer and distributor of designer eyeglass frames, prescription eyewear and sunglasses that are sold at various retail stores, as well as at sunglass stores and optometrist/ophthalmologist offices. To facilitate its business, Tura recruits and retains the services of sales representatives who, among other things, sell and market eyeglass frames and acquire new customers within the optical industry. In March 2016, claimant, a sales representative during the time period in question, entered into a written agreement with Tura to provide services to Tura as a sales representative. After his employment ended, he applied for unemployment insurance benefits in June 2017. In March 2018, the Department of Labor issued initial determinations finding that claimant was eligible to receive benefits and that Tura was liable for additional unemployment insurance contributions, effective January 1, 2015, on remuneration paid to claimant and all others similarly situated. Tura objected, and, following hearings, an Administrative Law Judge sustained the Department's determination. The Unemployment Insurance Appeal Board affirmed, and Tura appeals.
"Whether an employment relationship exists within the meaning of the unemployment insurance law is a question of fact, no one factor is determinative and the determination of the
. . . [B]oard, if supported by substantial evidence on the record as a whole, is beyond further judicial review even though there is evidence in the record that would have supported a contrary conclusion" (Matter of Concourse Ophthalmology Assoc. [Roberts], 60 NY2d 734, 736 [1983] [citations omitted]; see Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d 433, 437 [2010]). "[T]he relevant inquiry is whether the purported employer exercised control over the results produced or the means used to achieve those results, with control over the latter being the more important factor" (Matter of Escoffery [Park W. Exec. Servs. Inc.-Commissioner of Labor], 180 AD3d 1294, 1295 [2020]; see Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d at 437). "Significantly, all aspects of the arrangement must be examined to determine whether the degree of control and direction reserved to the purported employer establishes an employment relationship" (Matter of Dorsey [NY GO Express Inc.-Commissioner of Labor], 196 AD3d 941, 943 [2021] [internal quotation marks, brackets and citations omitted]; see Matter of Murray [TN Couriers LLC-Commissioner of Labor], 187 AD3d 1270, 1271 [2020]).
Here, substantial evidence in the record supports the Board's decisions. The record, which includes a written agreement executed [*2]by Tura and claimant, establishes that Tura advertised for sales representatives and that it would then interview a potential sales representative before hiring him or her. Claimant's testimony reflected that, upon being hired, he was required to attend a "boot camp" training seminar at which he was provided with training materials, and claimant explained that he believed that he could not refuse to attend the seminar or other trade shows and expos that he was told to attend. When claimant attended these events, Tura paid or reimbursed him for his travel expenses. To facilitate claimant's sales efforts, Tura provided claimant with sales aids, such as product samples, for which claimant was responsible, and he was required to return any sales aids to Tura upon termination of their business relationship.
Consistent with the testimonial evidence, the written agreement between claimant and Tura established that Tura assigned claimant to work in a specific geographic region, provided claimant with an email address, voicemail and business cards, imposed a sales plan requiring claimant to meet certain annual sales goals and required claimant to abide by Tura's confidentiality rules. Tura set the prices of their goods, subject to a minimal discretionary discount that claimant could provide to customers. Tura also set the rate of claimant's payment, and, pursuant to the agreement, claimant was provided with a "New Door Bonus," a monthly guarantee or draw that reduced each year, and a commission on net sales, the percentage of which increased each year. Claimant was also required to submit to Tura on a weekly basis "all processed orders, payments, credits, and customers returns" and provide to Tura a monthly written report updating Tura about his progress toward sales goals and a description of customer calls. The agreement also contained a noncompete clause, which prohibited claimant from working for companies that competed with Tura. Tura would also typically handle customer complaints and process payments from customers. Based upon this evidence, the Board could properly find that claimant and others similarly situated were employees of Tura, notwithstanding the fact that the record contains proof that could support a contrary result (see Matter of Pratt [Cellular Sales of N.Y., LLC-Commissioner of Labor], 128 AD3d 1306, 1307 [2015]; Matter of George [Upstate Merchandising-Commissioner of Labor], 254 AD2d 657, 657-658 [1998]; Matter of Roman [Berglund-Commissioner of Labor], 252 AD2d 707, 707-708 [1998]; Matter of Rhodes [Aspex Eyewear-Sweeney], 247 AD2d 689, 689 [1998]).
Lynch, J.P., Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the decisions are affirmed, without costs.