◼ In the Matter of Fusaro Reps, Inc., Appellant. Lillian Roberts, as Commissioner of Labor, Respondent.—Harvey, J. Appeal from a decision the Unemployment Insurance Appeal Board, filed February 20, 1985, which assessed the employer the sum of $3,213.13 as contributions due for the audit period from January 1, 1980 through June 30, 1983.

Fusaro Reps, Inc. (Fusaro) solicits advertising in this State and New Jersey for publication in the Thomas Register, a directory of industrial manufacturers and suppliers as well as their products. Fusaro's two salaried employees solicited 53% to 54% of the advertising business for the years in question. Their sales representatives generated the remaining business.

An audit was conducted of Fusaro and it was initially determined that the sales representatives were employees of Fusaro. Thus, contributions were assessed.

A hearing was held and the Administrative Law Judge (ALJ), relying on the following three findings, determined that an employer-employee relationship existed: (1) Fusaro's business operation is dependent upon the sales made by the sales representatives; (2) although the representatives are given great latitude in the manner in which they perform their jobs, they are subject to control by the leads given to them by Fusaro and by the manner in which they must, of necessity, report activities to Fusaro; and (3) all of the products of the sales representatives and all communications from the publisher of the Thomas Register are funneled through Fusaro's office. The Unemployment Insurance Appeal Board, adopting the ALJ's findings and opinion, affirmed. This appeal ensued.

Fusaro contends that the finding of an employer-employee relationship between it and its salespersons is not supported by substantial evidence. Substantial evidence is "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" *(300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 180; *accord, People ex rel. Vega v Smith,* 66 NY2d 130, 139). In order to determine whether the ALJ's determination is supported by substantial evidence, the findings upon which that determination is based must be considered.

First, the ALJ found that Fusaro's business operations were dependent upon the sales of its salespersons. While there is substantial evidence to support this finding, we fail to see how this finding lends support to the ultimate factual determination that an employer-employee relationship existed. A key factor in determining whether an employment relationship exists is the control exercised by the purported employer *(see, e.g., Matter of Field Delivery Serv. [Roberts],* 66 NY2d 516, 521; *Matter of 12 Cornelia St. [Ross],* 56 NY2d 895; *Matter of Sullivan Co. [Miller],* 289 NY 110). The fact that its salespersons were important in generating income does not speak to the issue of how much control Fusaro exercised over these people. Certainly the salespersons in *Matter of 12 Cornelia St. (Ross) (supra)* and *Matter of Ted Is Back Corp. (Roberts)* (64 NY2d 725) were important in producing income for their principals. Yet, in both cases, the Court of Appeals held that reversal of Board determinations of an employer-employee relationship was required.

The ALJ also found that, although the salespersons were

given great latitude in the manner in which they performed their jobs, they were subject to control because leads were given to them by Fusaro. We are hard pressed to find substantial evidence in the record to support the finding that the leads came from Fusaro. The salespersons developed their own leads or were given leads by the publisher of the Thomas Register. They were not required to follow up the leads given to them by the publisher. However, even assuming that support for this finding can be found in the record, we are unpersuaded that it lends support to the ALJ's ultimate determination. Indeed, the ALJ's finding that "the representatives are given great latitude in the manner in which they perform their jobs" undermines the determination that an employment relationship existed. This finding reflects that Fusaro had very little, if any, control over the *means* used by the salespersons to produce results. It is well established that the presence of control over the means is an important factor in determining the existence of an employer-employee relationship *(see, e.g., Matter of Field Delivery Serv. [Roberts], supra; Matter of Ted Is Back Corp. [Roberts], supra).*

The fact that the publisher provided leads to the salespersons does not constitute substantial evidence of an employment relationship *(see, Matter of Ted Is Back Corp. [Roberts], supra,* p 726 [fact that the petitioner "provided leads and retained the right to approve the contract price and supplied form contracts for their use does not constitute substantial evidence" of an employment relationship]). Likewise, the fact that the salespersons submitted contracts and other forms to Fusaro as required by the publisher fails to show that the type of control necessary for the finding of an employment relationship existed *(see, id.; Matter of Sullivan Co. [Miller],* 289 NY 110, *supra).*

The ALJ also found it important that communications from the publisher were funneled through Fusaro's office. This finding is consistent with the relationship among the parties. The publisher's only agreement was with Fusaro; thus, it logically follows that the publisher would send its communications to Fusaro. Fusaro could then pass relevant information on to the salespersons with whom it had agreements. This aspect of the relationship among the parties, however, does not reflect the control necessary for the finding of an employment relationship.

The additional facts argued, on appeal, which were not relied upon by the ALJ, are equally unprevailing. The weekly meetings alluded to by the Commissioner of Labor, which the

salespersons were not required to attend, is not substantial evidence of control over the salespersons. The fact that Fusaro advertises for and interviews salespersons does not reflect control over the subsequent agreement between the parties.

Finally, we find particularly relevant the following characteristics which are illustrative of the relationship between Fusaro and its salespersons: salespersons determine their own hours and vacations without approval from Fusaro; they work out of their homes and are not provided office space by Fusaro; within the area licensed by the publisher to Fusaro, salespersons are unrestricted as to where and who they solicit; leads, which do not have to be followed, come from either the publisher or the salespersons' own contacts, not from Fusaro; they pay all their own expenses; they are free to engage in other employment and solicit advertising for competitive publications; they are paid solely on the basis of commissions, although loans are allowed against the commissions to provide working capital; sales meetings are informally structured, with little if any input from Fusaro, and attendance is not required; and no deductions are made for taxes and no fringe benefits are provided by Fusaro. The characteristics of the relationship between the salespersons and Fusaro in the present case are strikingly similar to those in *Matter of 12 Cornelia St. (Ross) (supra,* pp 897-898). In *Matter of 12 Cornelia St.,* the Court of Appeals held that "[i]n the face of * * * these characteristics of petitioner's relationship with its salespersons, it cannot be said that substantial evidence exists to support the finding of the appeal board that the relationship is one of employment" *(id.,* p 898). In the case at bar it appears that, if anything, the relationship between Fusaro and its salespersons evidences less control by Fusaro than was present in *Matter of 12 Cornelia St. (Ross).* Accordingly, we conclude that the decision must be reversed.

Decision reversed, with costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent herewith. Main, J. P., Weiss, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.